UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>MYRON WAYNE DANIEL,<br><br>    Defendant. | Case No. 1:20-cr-00112-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendant Myron Wayne Daniel's Motion to Dismiss (Dkt. 27). Having reviewed the record and briefs, the Court finds the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons outlined below, Daniel's Motion to Dismiss is GRANTED.

## II. BACKGROUND

In 1988, Daniel pled guilty to Assault with the Intent to Commit Rape ("CAWICR") in violation of California Penal Code § 220. Upon his release from prison, Daniel was required to register as a sex offender under the Sex Offender Registration and Notification Act ("SORNA"), 34 U.S.C. § 20901 *et seq*. Daniel moved to Idaho in early 2019, but did

not register as a sex offender.[1] On June 10, 2020, Daniel was indicted by a grand jury for failing to register between April 2019 through June 2020, in violation of 18 U.S.C. § 2250(a).[2] Dkt. 1.

On April 30, 2021, Daniel moved to dismiss the Indictment because his duty to register under SORNA has purportedly expired. Dkt. 27. After briefing on Daniel's Motion to Dismiss closed, the Court requested supplemental briefing from the parties.[3] Such briefing has been submitted, and the matter is ripe for the Court's review.

### III. DISCUSSION

The length of time Daniel was required to register under SORNA depends upon his tier classification. SORNA classifies sex offenses as either Tier III, Tier II, or Tier I. 34 U.S.C. § 20911(2)–(4). While a Tier III offender must register for life, a Tier II offender must register for 25 years, and a Tier I offender must register for 15 years. 34 U.S.C. § 20915(a). The Government acknowledges that if Daniel is not a Tier III offender, he is no longer required to register under SORNA. Dkt. 34, at 2. The Court must accordingly evaluate whether Daniel's CAWICR conviction constitutes a Tier III offense. A Tier III

---

[1] SORNA requires qualifying offenders to "register, and keep the registration current, in each jurisdiction where the offender" resides, works, or goes to school. 34 U.S.C. § 20913(a) (formerly cited as 42 U.S.C. § 16913(a)). SORNA defines "sex offender" to "mean[] an individual who was convicted of a sex offense." 34 U.S.C. § 20911(1). The term "sex offense" is defined in § 20911(5)(A)(i) to include: "a criminal offense that has an element involving a sexual act or sexual contact with another." While Daniel argues he is not a Tier III offender, he does not dispute he was a sex offender.

[2] Section 2250 is the penalty provision of SORNA. 18 U.S.C. § 2250. Although Congress enacted SORNA in 2006, SORNA became retroactive, and applicable to pre-Act offenders, on August 1, 2008. *United States v. Mattix*, 694 F.3d 1082, 1083–84 (9th Cir. 2012) (citing *United States v. Valverde*, 628 F.3d 1159, 1169 (9th Cir. 2010)).

[3] Specifically, the Court requested simultaneous briefs on the applicability of *People v. Cook*, 213 Cal. Rptr. 3d 497 (Cal. Ct. App. 2017) to Daniel's SORNA registration requirement. Dkt. 36.

sex offender is defined, in relevant part, as "a sex offender whose offense is punishable by imprisonment for more than 1 year and . . . is comparable to or more severe than . . . aggravated sexual abuse or sexual abuse (as described in sections 2241 and 2242 of Title 18)." 34 U.S.C. § 20911(4)(A)(i).

The Court follows the categorical approach to assess whether Daniel's CAWICR conviction is comparable to or more severe than federal aggravated sexual abuse and sexual abuse. *United States v. Cabrera-Gutierrez*, 756 F.3d 1125, 1133 (9th Cir. 2014) (citations omitted). In following the categorical approach, it must be noted that the Court is required to compare California law—not Idaho law—to federal law because Daniel was convicted under California law.

## A. Categorical Approach

Under the categorical approach, the Court compares the elements of CAWICR with the elements of aggravated sexual abuse under 18 U.S.C. § 2241(a)(1), and sexual abuse under 18 U.S.C. § 2242(1).[4] *United States v. Descamps*, 570 U.S. 254, 260 (2013) (citing *Taylor v. United States*, 495 U.S. 575, 599–600 (1990)). Daniel's prior conviction may properly serve as a predicate for his classification as a Tier III sex offender if CAWICR is defined more narrowly than, or has the same elements as, the "generic" federal crimes. *Cabrera-Gutierrez*, 756 F.3d at 1133. If, however, CAWICR "sweeps more broadly" than the federal crimes, Daniel's prior conviction cannot serve as a statutory predicate for his

---

[4] A violation of either 18 U.S.C. § 2241(a)(1) or § 2242(1) would render Daniel a Tier III sex offender pursuant to 34 U.S.C. § 20911(4)(A)(i). Because 34 U.S.C. § 20911(4)(A) defines Tier III offenses to include any "attempt" to commit an offense comparable to aggravated sexual abuse or sexual abuse, the Court references the pertinent federal crimes without using the term "attempted."

Tier III classification. *Id.* (quoting *Descamps*, 570 U.S. at 261).

Under *Descamps*, the "key" to the categorical comparison is only the "statutory definitions—*i.e.,* the elements—of a defendant's prior offense[]" and *not* "the particular facts underlying" the conviction. 570 U.S. at 260 (quoting *Taylor*, 495 U.S. at 600). The Court must presume that Daniel's prior conviction "rested upon [nothing] more than the least of th[e] acts criminalized" by CAWICR. *United States v. Baldon*, 956 F.3d 1115, 1125 (9th Cir. 2020) (alterations in original) (quoting *Moncrieffe v. Holder*, 569 U.S. 184, 190–191 (2013)). Thus, the Court cannot consider the facts giving rise to Daniel's CAWICR conviction, even if such facts establish that his conduct was equivalent to federal sexual abuse or aggravated sexual abuse. *Cabrera-Gutierrez*, 756 F.3d at 1133.

To establish CAWICR is not a categorical match with the cognate federal crimes, Daniel must show "a realistic probability, not a theoretical possibility" that California would apply CAWICR to conduct that falls outside the generic definition of federal sexual abuse or aggravated sexual abuse. *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). This reasonable possibility can be demonstrated by showing that, "in at least one other case," a California state court "in fact did apply" CAWICR to conduct that was less severe than crimes of sexual abuse or aggravated sexual abuse. *Nunez v. Holder*, 594 F.3d 1124, 1129 (9th Cir. 2010), *overruled on other grounds by Betansos v. Barr*, 928 F.3d 1133, 1141–42 (9th Cir. 2019).

### B. CAWICR

CAWICR is a form of attempted rape. *People v. Rupp*, 260 P.2d 1, 7 (Cal. 1953); *People v. Leal*, 103 Cal. Rptr. 3d 351, 358 (Cal. Ct. App. 2009). The elements of CAWICR

are: (1) an assault (2) with a specific intent to commit rape. *People v. Puckett*, 118 Cal. Rptr. 884, 888 n. 3 (Cal. Ct. App. 1975). The parties agree that the assault element of CAWICR matches that of federal attempt law. Dkt. 34, at 5, 11; Dkt. 35, at 3. That is, a person who commits California assault also, categorically, commits a federal act of attempt. *Id.*; *see also* Dkt. 37, at 4 ("The force required for an assault in California is equivalent to a federal attempt."); Dkt. 38, at 2.

The parties also agree that the ultimate question for the Court is whether the force required for the substantive state offense (rape) is broader than that required for a conviction of aggravated sexual abuse or sexual abuse under federal law.[5] *See, e.g.*, Dkt. 34, at 6; Dkt. 35, at 9–10 n. 3. Said another way, if California's rape statute criminalizes conduct that would not constitute federal aggravated sexual abuse or sexual abuse, then Daniel's prior state conviction cannot serve as a predicate for his classification as a Tier III sex offender and the Indictment must be dismissed. On the other hand, if California's rape statute criminalizes conduct that is more severe than, or equivalent to, federal aggravated sexual abuse or sexual abuse, then Daniel is a Tier III offender and his Motion to Dismiss must be denied.

## C. Aggravated Sexual Abuse

In California, rape is defined by statute, in relevant part, as "an act of sexual intercourse . . . accomplished against a person's will by means of *force*, violence, or fear

---

[5] Daniel does not dispute that it is appropriate to apply the modified categorical approach to narrow the focus to the specific crime of assault with intent to commit rape under California Penal Code § 220, and, specifically, rape by force or fear under California Penal Code § 261(a)(2). Dkt. 27, at 5 n. 2 (citing *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016)).

of immediate and unlawful bodily injury on the person or another." California Penal Code § 261(a)(2) (1988) (emphasis added).[6] Similarly, aggravated sexual abuse is defined, in relevant part, as a person who "knowingly causes another person to engage in a sexual act[7] by using *force* against that other person[.]" 18 U.S.C. 2241(a)(1)[8] (emphasis added). The parties dispute whether the "force" required under California Penal Code § 261(a)(2) is equivalent to the "force" required under § 2241(a)(1).

*1. Force under California Penal Code § 261(a)(2) and 18 U.S.C. § 2241(a)(1)*

Daniel argues force is broader under California Penal Code § 261(a)(2) than under § 2241(a)(1) because, in California, rape can be committed with only the force inherent to sexual penetration, while aggravated sexual abuse requires additional force. The Government counters that the force required for both California rape and aggravated sexual abuse is force sufficient to overcome the will of the victim. As such, the Government contends the force elements of California's rape statute and federal aggravated sexual abuse are coterminous.

In California, the "term 'force' as used in the rape statute is not specifically defined." *People v. Griffin*, 94 P.3d 1089, 1093 (Cal. 2004). In *Griffin*, the California Supreme Court held there was nothing in the express statutory language of California Penal Code § 261 to

---

[6] California Penal Code § 261 was amended in 1990 to add duress and menace as means of accomplishing sexual intercourse against a person's will.

[7] The definition of a "sexual act" for purposes of § 2241 includes "contact between the penis and the vulva," which "occurs upon penetration, however slight." 18 U.S.C. § 2246(2)(A).

[8] Daniel maintains, and the Government does not contest, that the other subsections of § 2241 are not a match with a violation of CAWICR by force. Dkt. 27, at 7 n. 3.

MEMORANDUM DECISION AND ORDER - 6

suggest "force in a forcible rape prosecution actually means force *substantially* different from or *substantially* greater than the physical force normally inherent in an act of consensual sexual intercourse." *Id.* at 1094 (emphasis in original) (cleaned up). The *Griffin* court explained:

> The Legislature has never sought to circumscribe the nature or type of forcible conduct that will support a conviction of forcible rape, and indeed, the rape case law suggests that even conduct which might normally attend sexual intercourse, when engaged in with force sufficient to overcome the victim's will, can support a forcible rape conviction.

*Id.* at 1096–97. Because "the fundamental wrong is the violation of a woman's will and sexuality, the law of rape does not require that 'force' cause physical harm." *Id.* at 1095 (citation omitted). Rather, the "law of rape primarily guards the integrity of a woman's will and the privacy of her sexuality from an act of intercourse undertaken without her consent." *Id.* Under *Griffin*, the force element turns upon a lack of consent rather than on a particular degree of actual force. *Id.* at 1097.

Following *Griffin*, the California Court of Appeals held a forcible rape conviction could be sustained with no more force than that "inherent in the act of penetration" in *In Re Jose P.*, 31 Cal. Rptr. 3d 430, 435 (Cal. Ct. App. 2005). In *Jose P.*, the minor victim voluntarily engaged in sexual foreplay with the minor defendant. During such, the defendant attempted penetration but failed. *Id.* at 431. After the failed attempt, the victim told the defendant she was not willing to have sex, but continued to voluntarily engage in foreplay. *Id.* Later, the defendant achieved penetration against the victim's will but without the exertion of any force other than that inherently involved in the act of penetration itself. *Id.* at 434.

The victim in *Jose P.* acknowledged that the defendant never threatened her or attempted to stop her from leaving his room, and the court also determined there was no evidence the defendant used his weight as a means to hold the victim down. *Id.* at 434. The court nonetheless held "the force inherently involved in the penetration itself was sufficient" to support the defendant's conviction of forcible rape. *Id.* In so holding, the court explained:

> We do not hold that, in all cases, the force inherent in the act of penetration is sufficient to show forcible rape; indeed, we think as a general matter it is not. . . . What we do hold is that there is substantial evidence in this case to show that, against the victim's will, appellant forced his penis inside her vagina and thus committed a violation of [California Penal Code § 261(a)(2)].

*Id.* at 435 (citations omitted).

Although the *Jose P.* court held the act of penetration is not, as a general matter, sufficient to show forcible rape, it nonetheless held such force *was* sufficient to support the defendant's conviction for forcible rape where the victim made it clear to the defendant "repeatedly and prior to penetration" that she was unwilling to have sex. *Id.* As Daniel notes, the categorical approach does not consider the typical way a state offense is committed. Dkt. 35, at 5. Instead, "to satisfy the categorical test, even the least egregious conduct the [state] statute covers must qualify" as federal aggravated sexual abuse. *United States v. Lopez-Solis*, 447 F.3d 1201, 1206 (9th Cir. 2006). The existence of even a single unpublished decision is sufficient to establish, for purposes of the categorical analysis, that a state statute is overbroad. *Nunez*, 594 F.3d at 1137 n. 10. *Jose P.* illustrates the least egregious amount of force necessary to sustain a conviction under California's rape statute

is the force "inherent in the act of penetration" if such penetration is against the victim's will. *Jose P.*, 31 Cal. Rptr. 3d at 435.

By contrast, the Ninth Circuit has held § 2241(a)(1) "requires a showing of actual force." *United States v. H.B.*, 695 F.3d 931, 936 (9th Cir. 2012) (quoting *United States v. Fulton*, 987 F.2d 631, 633 (9th Cir. 1993)). "While the statute does not define 'force' or specify how much force is necessary to amount to a violation," Congress has stated that the requirement of force may be satisfied by a showing of "the use of such physical force as is sufficient to overcome, restrain, or injure a person[.]" *Id.* (citation omitted); *see also United States v. Archdale*, 229 F.3d 861, 868 (9th Cir. 2000) (same); *Fulton*, 987 F.2d at 633 (same); *United States v. Fire Thunder*, 908 F.2d 272, 274 (8th Cir. 1990) ("Section 2241(a)(1) envisions actual force.").

The Government interprets "overcome," as referenced in the aforementioned cases, as force sufficient "to overcome the victim's will." Dkt. 34, at 8. However, this is not what the federal cases state. Instead, "overcome" appears to mean to physically overcome the victim—and not just to overcome the victim's will—because the cases say aggravated sexual abuse requires "*physical* force" sufficient to "overcome . . . *a person*" and not force sufficient to overcome *a person's will*. *H.B.*, 695 F.3d at 936 (emphasis added). Moreover, the federal cases each explain the "force requirement is met when the 'sexual contact resulted from a restraint upon the other person that was sufficient that the other person *could not escape* the sexual contact.'" *Fulton*, 987 F.2d at 633 (emphasis added) (quoting *Fire Thunder*, 908 F.2d at 274); *Archdale*, 229 F.3d at 868; *H.B.*, 695 F.3d at 936 ("In our few judicial decisions interpreting the term 'force,' we have held that, 'the force

MEMORANDUM DECISION AND ORDER - 9

requirement is met when the sexual contact resulted from a restraint upon the other person that was sufficient that the other person could not escape the sexual contact." (quoting *Fulton*, 987 F.2d at 633)); *United States v. Lucas*, 157 F.3d 998, 1002 (5th Cir. 1998) ("[T]he disparity in power between a jail warden and an inmate, *combined with physical restraint*, is sufficient to satisfy the force requirement of § 2241.") (emphasis added)).

As *Jose P.* illustrates, a conviction for rape under California Penal Code § 261(a)(2) does not require that the victim was physically overcome, restrained, or prevented from escaping the sexual contact. 31 Cal. Rptr. 3d at 432, 434 (explaining there was no evidence the defendant used his weight to hold the victim down, and noting, "[o]n both direct and cross examination, [the victim] acknowledged that [the defendant] had never threatened her or attempted to stop her from leaving the room."). The California Supreme Court has also specifically held the force required for a conviction under California's rape statute does not require that the victim was physically unable to escape sexual contact. *Griffin*, 94 P. 3d at 1096 ("[I]n a forcible rape prosecution the jury determines whether the use of force served to overcome the will of the victim to thwart or resist the attack, *not* whether the use of such force physically facilitated sexual penetration or prevented the victim from physically resisting her attacker.") (emphasis in original).

Because, in its broadest application, California Penal Code § 261(a)(2) requires only the force inherent in the act of penetration itself, if such penetration is against an express manifestation of the victim's will, it is not a categorical match with aggravated sexual abuse, which requires force sufficient to physically overcome, restrain, or injure *the victim*.

The Government suggests *United States v. Bordeaux*, 997 F.2d 419, 420 (8th Cir.

1993) illustrates a disparity in size—without actual force—is sufficient force for a conviction of aggravated sexual abuse. The *Bordeaux* court stated the "apparent disparity in size between Mr. Bordeaux and the victim [200 pounds versus a 10-year old child]. . . *might* be enough, in itself, to establish" a restraint amounting to force. *Id.* at 421 (emphasis added). As Daniel highlights, the Government reasons that *Bordeaux* means federal aggravated sexual abuse can be committed through atmospheric "force"—such as a size or power difference between the defendant and the victim—and with no more force than that inherent to penetration. *See* Dkt. 35, at 7 (citing Dkt. 34, at 10–11). However, the Eighth Circuit has more recently held "size difference alone *cannot* establish use of force" and "status evidence, i.e., a large adult and a small child" alone is insufficient to establish "force as an affirmative matter," as required under § 2241(a)(1). *United States v. Blue*, 255 F.3d 609, 613 (8th Cir. 2001) (emphasis added).[9] Rather, a difference is size is relevant only where there is evidence that "the defendant affirmatively used his size advantage to effect the crime," such as by "immobiliz[ing] the victim by his weight." *United States v. Sharpfish*, 408 F.3d 507, 510–511 (8th Cir. 2005). Yet, as discussed above, the court in *Jose P.* upheld a conviction for forcible rape after explicitly finding there was no evidence the defendant used his size to physically overcome or restrain his victim. 31 Cal. Rptr. 3d

---

[9] Several of the cases referenced in this Memorandum Decision and Order, including *Blue* and *Bordeaux*, involved appeals of sentencing enhancements applied by the trial court for using force contemporaneous with aggravated sexual abuse. Section 2A3.1(b)(1) of the United States Sentencing Guidelines provides: "If the offense was committed by the means set forth in 18 U.S.C. § 2241(a) or (b), increase by 4 levels." In *Blue*, the Eighth Circuit affirmed the defendant's conviction for sexual abuse, but vacated his sentence and remanded to the trial court for resentencing without the four-level enhancement for use of force because 2A3.1(b)(1), and, by implication, § 2241(a)(1), require more force than simply a difference in size between the victim and the perpetrator. 255 F.3d at 613.

at 434.

Other federal cases demonstrate that federal aggravated sexual abuse requires proof the defendant did not simply overcome the will of the victim, but instead used physical force to accomplish the sex act. For instance, in *Cates v. United States*, 882 F.3d 731 (7th Cir. 2018), the Seventh Circuit considered whether a jury instruction on aggravated sexual abuse was in error. At Cates's trial, the judge instructed the jury that "force" under § 2241(a)(1) did not mean the government was required to demonstrate that the "defendant used actual violence," and that "force" included "not just physical force but also psychological coercion and [could] even be inferred from a disparity in size between the defendant and victim." *Id.* at 733, 737. The Seventh Circuit found this instruction was "badly flawed," explaining "[w]e long ago held that the term 'force' in § 2241(a)(1) means *physical* force." *Id.* at 737 (emphasis in original) (citing *United States v. Boyles*, 57 F.3d 535, 544 (7th Cir. 1995)).

The Seventh Circuit further instructed:

> By defining 'force' in this expansive way the jury instruction flatly contradicted the text of § 2241(a)(1). . . . The instruction plainly misstated the law by wrongly suggesting that force does *not* mean *physical* force. The jury was told that threats and other nonphysical forms of coercion— including a mere disparity in coercive power or size—could suffice to establish force. That erroneously conflated the distinction between 'force' [as required for aggravated sexual abuse] and 'fear' [as required for non-aggravated sexual abuse], relaxing the government's burden.

*Cates*, 882 F.3d at 737 (emphasis in original). *Cates* illustrates force sufficient to overcome the will of the victim, without physical force, is insufficient to constitute aggravated sexual abuse under § 2241(a)(1).

Further, in *United States v. Montgomery*, 966 F.3d 335 (5th Cir. 2020), the Fifth Circuit specifically held the force element of § 2241(a)(1) requires physical force in addition to that inherent to sexual penetration. The defendant in *Montgomery* appealed his conviction for failure to register under SORNA. Like Daniel, the defendant argued his registration requirement had expired because his underlying state conviction was not a Tier III offense. *Id.* at 337. The Fifth Circuit applied the categorical approach to determine whether the defendant's conviction for second degree sexual assault under New Jersey law was comparable to, or more severe than, federal aggravated sexual abuse. *Id.* at 338.

At the time the defendant in *Montgomery* was convicted of his state crime, New Jersey's sexual assault statute required, in relevant part, an "act of sexual penetration" using "physical force or coercion." *Id.* (citing 1992 N.J. Stat. § 2C:14–2(c)(1)). The Fifth Circuit held the "force" required under the New Jersey statute was broader than "force" required under § 2241(a)(1) because, like California Court of Appeals in *Jose P.*, New Jersey courts had held "physical force in excess of that inherent in the act of sexual penetration is not required for such penetration to be unlawful . . . [r]ather, the act of penetration itself, if engaged in by the defendant without the affirmative and freely-given permission of the victim . . . satisfies the physical force or coercion element of sexual assault." *Id.* at 338–39 (cleaned up). The *Montgomery* court explained § 2241(a)(1) instead requires "restraint sufficient to prevent the victim from escaping."[10] *Id.* at 338 (citations omitted). Since the

---

[10] The Government suggests *Montgomery* is inapposite because it was not an attempt case. This is irrelevant given the Government's agreement that the ultimate question is whether the force required for rape under California law is broader than that required for a conviction of aggravated sexual abuse. Dkt. 34, at 7. The Government also contends the "New Jersey predicate law is not like California rape law in the case at bar (Continued)

New Jersey predicate statute criminalized conduct that fell outside of the definition of aggravated sexual abuse, the *Montgomery* Court held the defendant was not required to register as a Tier III offender and vacated his conviction for failure to register under SORNA. *Id.* at 339.

Because § 2241(a)(1) requires force sufficient to *physically* overcome, restrain, or injure the victim, while forcible rape in California—in its broadest form—requires force sufficient to overcome the victim's will, Daniel's prior offense is not a categorical match with § 2241(a)(1). The Court must next consider whether Daniel's prior offense is a categorical match with federal sexual abuse.

### D. Sexual Abuse

As noted, California defines rape as "an act of sexual intercourse" . . . "accomplished against a person's will by means of force, violence, or fear of immediate and unlawful bodily injury on the person or another." California Penal Code § 261(a)(2) (1988). Under 18 U.S.C. § 2242(1), a person commits sexual abuse if they knowingly cause "another person to engage in a sexual act by threatening or placing that other person in fear[.]"[11] While, in its broadest application, forcible rape in California includes an act of sexual intercourse against the victim's will, *Griffin*, 94 P.3d at 1094, the Ninth Circuit has interpreted the phrase "threatening or placing that other person in fear" in § 2242(1) to

---

which requires force." *Id.* at 12. While the amended N.J. Stat. § 2C:14–2(c)(1) requires only "an act of penetration" using "coercion or without the victim's affirmative and freely-given permission," the 1992 version of the statute, which was the relevant statute for purpose of the *Montgomery* court's categorical analysis, did require an act of penetration through "the use of physical force or coercion." 966 F.3d at 338.

[11] The other provisions of § 2242 are not at issue in this case.

require *more* than merely a lack of consent. *Cabrera-Gutierrez*, 756 F.3d at 1133–34 (holding an Oregon sexual abuse statute penalizing penetration without consent was broader than § 2242); *see also Montgomery*, 966 F.3d at 339 (finding New Jersey statute, which criminalized non-consensual intercourse through the use of physical force or coercion, was broader than § 2242); *United States v. Iu*, 917 F.3d 1026, 1031 (8th Cir. 2019) (holding defendant's history of physically assaulting and threatening to kill the victim, coupled with the victim's fear of being hit again and a physical struggle when the defendant attempted to remove the victim's underwear, satisfied the fear requirement of § 2242); *United States v. Betone*, 636 F.3d 384, 388 (8th Cir. 2011) (relying on statements such as "[y]ou don't want to do that, because it's the worst thing you can do for yourself right here and right now," and fact that defendant blocked the exit and prevented the victim from leaving to establish sexual abuse through the use of threats or fear under § 2242).

In California, the "gravamen of the crime of forcible rape is sexual penetration *accomplished against the victim's will*[.]" *Griffin*, 94 P.3d at 1097 (emphasis added). Thus, "even conduct which might normally attend sexual intercourse, when engaged in with force sufficient to overcome the victim's will, can support a forcible rape conviction." *Id.* at 1089. Significantly, in *Jose P.*, the California Court of Appeals held nonconsensual intercourse that did not involve the use of threats or fear nonetheless violated California's forcible rape statute. 31 Cal. Rptr. 3d at 433–34. The prosecutor in *Jose P.* conceded that any fear felt by the victim "was just based on her simple inexperience" and was not due to any conduct by the defendant. *Id.* at 433 n. 4. As noted, the victim also acknowledged that the defendant never threatened her. *Id.* at 432. Thus, while nonconsensual intercourse

without the use of threats or fear would not violate § 2242(1), *Jose P.* illustrates nonconsensual intercourse without the use of threats or fear can constitute a violation of California Penal Code § 261(a)(2). *Id.* at 433. California's rape statute thus penalizes a broader class of behavior than § 2242(1) and Daniel's prior offense is also not a categorical match with federal sexual abuse.

## IV. CONCLUSION

In short, Daniel's conviction does not qualify as a Tier III offense, and his duty to register under SORNA has expired. As such, the Indictment must be dismissed. The Court does not make this decision lightly. Like many other federal courts, this Court is skeptical of the categorical approach because it is "difficult to apply and can yield dramatically different sentences depending on where a [crime] occurred." *Quarles v. United States*, 139 S. Ct. 1872, 1881 (2019) (Thomas, J., concurring); *see also United States v. Escalante*, 933 F.3d 395, 406 (5th Cir. 2019) ("In the nearly three decades since its inception, the categorical approach has developed a reputation for crushing common sense in any area of the law in which its tentacles find an inroad."); *United States v. Davis*, 875 F.3d 592, 595 (11th Cir. 2017) (observing that the categorical approach carries judges "down the rabbit hole . . . to a realm where we must close our eyes as judges . . . It is a pretend place in which a crime the defendant committed violently is transformed into a non-violent one. . . . Curiouser and curiouser it has all become[.]"); *United States v. Doctor*, 842 F.3d 306, 313–15 (4th Cir. 2016) (Wilkinson, J., concurring) (stating that the categorical approach has caused judges to "swap[] factual inquiries for an endless gauntlet of abstract legal questions[.]").

Although the specific acts underlying Daniel's conviction fit within SORNA's Tier III definition, the Court is compelled by the categorical approach to find Daniel is not a Tier III offender because the crime of rape in California is broader than the crimes of federal aggravated sexual abuse and sexual abuse. *See, e.g.*, Dkt. 34-1. Nevertheless, the Court is bound to follow the categorical approach, and this outcome is required, "by faithful adherence to precedent." *Escalante*, 933 F.3d at 406.

## V. ORDER

Now, therefore, IT IS HEREBY ORDERED:

1. Daniel's Motion to Dismiss (Dkt. 27) is **GRANTED** and the Indictment (Dkt. 1) is **DISMISSED**.

DATED: July 19, 2021

David C. Nye
Chief U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 17